M. Barbara CHRISTMAN, Janet M. Toolson, John Archbold, and Ben O. Carroll on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BRAUVIN REALTY ADVISORS, INC., Brauvin Realty Advisors II, Inc., Brauvin Realty Advisors III, Inc., Brauvin Realty Advisors IV, Inc., Corporate General Partners; Jerome J. Brault; Brauvin Real Estate Funds, Llc, Defendants.

No. 96 C 6025.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 22, 1999.

Richard S. Kohn, Mills Law Firm, San Rafael, CA, Ronald L. Futterman, Michael L. Behn, Futterman & Howard, Chtd., Chicago, IL, Larry D. Drury, Larry D. Drury & Associates, for plaintiffs.

William Lynch Schaller, John M. Murphy, Baker & McKenzie, Chicago, IL, for defendants.

John J. Cummins, Canepa & Cummins, P.C., for Intervening Defendants.

Robert W. Tarun, Jeffrey A. Leon, Winston & Strawn, Chicago, IL, for Nominal Defendants.

## *MEMORANDUM OPINION AND ORDER*

GOTTSCHALL, District Judge.

The plaintiffs in this action ("the Named Plaintiffs") have moved for class certification under Rule 23(b)(1) and (b)(2) for those claims not already certified under those sections and for certification of all claims but one under Rule 23(b)(3). The defendants and certain members of the class ("the Individual Plaintiffs") do not oppose certification of a class but challenge the adequacy of the Named Plaintiffs and their counsel, the Mills Firm, to represent the class.[1] The Individual Plaintiffs have filed a motion to appoint their proposed representatives to represent the class. For the reasons set forth below, the Named Plaintiffs' motion for class certification is granted and the Individual Plaintiffs' motion is denied.

In addition to the Named Plaintiffs' motion for class certification, this opinion also addresses defendants' December 4, 1997 motion to remove the Named Plaintiffs and their counsel as inadequate class representatives under Rule 23. On December 22, 1997, certain members of the class (the Individual Plaintiffs) filed a similar motion to remove the Named Plaintiffs and their counsel.[2] By separate motion, the Named Plaintiffs moved on January 20, 1998 to strike the appearance of counsel for the Individual Plaintiffs and to strike all pleadings and papers filed by counsel for the Individual Plaintiffs. In responding to the Named Plaintiffs' motion, the Individual Plaintiffs have moved to intervene. The court delayed ruling on these motions at the behest of the parties, when the parties agreed to the appointment of a special master to attempt to dispose of the assets of the limited partnerships and settle this litigation.

## *BACKGROUND*

A brief summary of the background of this action is sufficient for addressing these motions. The Named Plaintiffs represent limited partners of four limited partnerships (hereinafter, "the Brauvin partnerships"). The claims arise out of a proposed transaction in which the assets of the Brauvin partnerships would be acquired by a company, Brauvin Real Estate Funds, L.L.C., which is owned, at least in part, by Jerome J. Brault. Brault also serves as the managing general partner of the Brauvin partnerships. The defendants include Brault, the corporate general partners, and Brauvin Real Estate Funds, L.L.C.

In the original complaint, plaintiffs alleged that by entering into the "self-dealing" transaction, the general partners breached their fiduciary duties, breached the partnership agreements by, among other things, violating a provision that prohibited self-dealing, and breached the covenant of good faith and fair dealing. In addition, plaintiffs alleged that the proxy voting procedure used to obtain

---

1. Both the defendants and the Individual Plaintiffs request that two of the Individual Plaintiffs, the Fabick Employee Pension Fund and James Weiss, be appointed as class representatives, and that the law firm of Canepa & Cummins be appointed as class counsel.

2. Counsel for the Individual Plaintiffs filed an appearance pursuant to Rule 23 on behalf of Fabick Employees' Profit Sharing Plan and 17 other limited partners. According to papers filed on behalf of the Individual Plaintiffs, Fabick is the member of the class with the greatest financial interest, holding a stake in excess of $1,000,000 in the limited partnerships.

approval for the transaction was contrary to Delaware law and/or the limited partnership agreements. Plaintiffs also claimed that the defendants violated the Illinois consumer fraud statute. On October 2, 1996, this court certified a class comprised of the limited partners of the Brauvin partnerships, with four subclasses consisting of the limited partners of each of the four Brauvin partnerships. The class was certified under Rule 23(b)(1) and Rule 23(b)(2) for six counts in the original complaint. The Named Plaintiffs were certified as class representatives, with their counsel, the Mills Firm, as class counsel.

On April 2, 1997, the Named Plaintiffs filed a Second Amended and Supplemental Complaint ("SASC"), alleging fourteen counts, including claims that the defendants violated Illinois and federal securities laws. The Named Plaintiffs did not immediately move for class certification for the additional counts alleged in the SASC. However, on April 21, 1997, the Named Plaintiffs provided via the *Business Wire* notice of the pendency of the lawsuit. On August 11, 1997, the court ruled that this notice was sufficient under the Private Securities Litigation Reform Act ("PSLRA") and, after a hearing at which competing requests for designation as lead plaintiffs were considered, appointed the Named Plaintiffs as lead plaintiffs under the PLSRA. Class counsel (the Mills Firm) was appointed as lead counsel.

On October 30, 1998—the same date the Named Plaintiffs filed the present motion for class certification—the Named Plaintiffs filed a motion for leave to file a Consolidated Third Amended and Supplemental Class and Derivative Complaint ("CTASC"). The defendants oppose the motion for leave to file the CTASC only to the extent that the CTASC names James Brault as a defendant. Therefore, the court will consider for certification the claims alleged in the CTASC. The court addresses the proposed addition of James Brault in a separate order. The CTASC supplements the SASC with allegations that the defendants breached their fiduciary duties by their conduct subsequent to the filing of the SASC. The CTASC separates some specific claims that had been part of broader claims. These separate claims are the Fifteenth and Sixteenth Claims of the CTASC. In addition, the CTASC adds a new Seventeenth Claim seeking a declaratory judgment that the defendants are not entitled to indemnification under the partnership agreements.

In December 1997, certain members of the class (the Individual Plaintiffs), who were dissatisfied with the Named Plaintiffs and their counsel, filed their appearances and filed a motion to remove the Named Plaintiffs and their counsel. As noted above, the defendants also filed a motion to remove the Named Plaintiffs and their counsel. The Individual Plaintiffs are represented by John J. Cummins of the law firm of Canepa & Cummins, P.C. On December 23, 1997, this court ordered that the motions to remove the named plaintiffs and their counsel be held in abeyance. On January 16, 1998, pursuant to a motion by the defendants, this court issued an order barring the defendants from disposing of the assets of the limited partnerships without this court's approval. On January 28, 1998, at the suggestion of the parties, this court appointed a special master to recommend procedures for disposing of the assets of the limited partnerships and to attempt to settle this litigation. The special master began discussions with the parties in an attempt to work out procedures for disposing of the assets of the limited partnerships. Among other things, the special master recommended (and this court ordered) that a financial advisor be appointed to perform a valuation of the assets of the partnerships.

On May 4, 1998, the Named Plaintiffs filed a motion for class certification for those claims not covered by the October 1996 order. However, the motion only sought certification for the additional claims under Rules 23(b)(1) and (b)(2). The Named Plaintiffs did not move for certification of a damages class under Rule 23(b)(3). However, at the request of the court and without objection of the parties, the Named Plaintiffs withdrew their motion so that the parties could focus on the discussions with the special master.

On August 11, 1998, pursuant to the suggestion by the parties and the special master that resolution of the proxy voting claim

would improve the chances for a settlement, this court ruled that the proxy voting procedure violated the provisions for voting set out in the limited partnership agreements and was therefore invalid. This ruling, as well as the January 1997 order barring the defendants from disposing of the assets, makes it extremely unlikely that the proposed transaction will be consummated.

In November 1998, the discussions between the parties and the special master concerning procedures to dispose of the assets of the limited partnerships reached an impasse. On November 13, 1998, at the request of the special master, the court withdrew the order of reference to the special master. Thus, at this time, there is very little possibility that the assets of the limited partnerships can be disposed of in the near future. As a result, the limited partners' investments are tied up in the Brauvin partnerships for the foreseeable future. Even more troubling, the parties appear to agree that the assets of the limited partnerships are likely to decline in value the longer they are held. The Individual Plaintiffs report that they have reached a settlement in principle with the defendants and that if they are approved as class representatives, they will settle this action immediately.

### DISCUSSION

As noted above, this opinion addresses the following motions: (1) the Named Plaintiffs' motion for class certification; (2) the Individual Plaintiffs' motion for appointment of their proposed representatives to represent the class; (3) the motions to remove the named plaintiffs and their counsel; (4) the motion to strike the appearance and all papers filed by the Individual Plaintiffs; and (5) the motion by the Individual Plaintiffs to intervene.

In the motions to remove the named plaintiffs and their counsel and in their responses to the Named Plaintiffs' motion for class certification, the defendants and the Individual Plaintiffs challenge the adequacy of the Named Plaintiffs and their counsel. Because there is considerable overlap between the motions—indeed, the parties have incorporated their briefs regarding the motions to remove into their briefs on class certification—the court will consider the substance of the motions together.

### I. REQUIREMENTS FOR CLASS CERTIFICATION

Rule 23(a) sets out prerequisites to a class action. A class action may be brought only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). The defendants and the Individual Plaintiffs do not dispute that the first three prerequisites of Rule 23(a) are satisfied, and this court agrees. The numerosity requirement is met, as the class is comprised of approximately 7100 limited partners residing throughout the United States. The commonality and typicality requirements are satisfied, as the class members all would have participated in the proposed transaction and were affected by the alleged conduct of the defendants. The claims of the Named Plaintiffs are typical of those that would be raised by other class members. However, the defendants and Individual Plaintiffs argue that the Named Plaintiffs and their counsel cannot adequately protect the interests of the class. Because the dispute as to the adequacy of the Named Plaintiffs and their counsel is central to the motion for class certification and the motions to remove the Named Plaintiffs and their counsel, it will be discussed at length below.

In addition to the prerequisites of Rule 23(a), an action must also satisfy at least one of the provisions of Rule 23(b). In the order of October 2, 1996, this court found that the first six claims satisfied the requirements of both 23(b)(1) and 23(b)(2). The defendants and Individual Plaintiffs do not contest—and this court finds—that the Seventh through Seventeenth Claims in the CTASC meet the requirements of Rule 23(b)(1) and (b)(2).[3]

---

**3.** This court finds that the class meets the re-

quirements of both Rule 23(b)(1)(A) and

In addition, for the first time, the Named Plaintiffs have moved for certification of a damages class under Rule 23(b)(3). The Named Plaintiffs move for certification of the First through Sixteenth Claims of the CTASC.[4] Certification under Rule 23(b)(3) is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The defendants and the Individual Plaintiffs do not dispute, and this court finds, that the requirements of Rule 23(b)(3) are satisfied.

## II. *CHALLENGES TO THE ADEQUACY OF THE NAMED PLAINTIFFS*

■ As noted above, in their motions to remove and in their responses to the motion for class certification, the defendants and the Individual Plaintiffs challenge the adequacy of the Named Plaintiffs and their counsel. Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy of representation requirement has three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Gammon v. GC Servs. Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D.Ill.1995).

### A. *Challenges to Adequacy in the Motion to Remove*

Defendants and the Individual Plaintiffs argue that the Named Plaintiffs and their counsel should be removed from their positions as class representatives and class counsel, respectively, for those claims for which a class was certified on October 2, 1996. Although this court previously found that the Named Plaintiffs and their counsel could adequately represent the class, "[b]asic consideration of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 89–90 (7th Cir.1977) (quoting *National Association of Regional Medical Programs v. Mathews*, 551 F.2d 340, 344–45 (D.C.Cir.1976)). The defendants and Individual Plaintiffs argue that there are several factors that justify removing the Named Plaintiffs and their counsel. As noted above, the court will consider the grounds raised in the motions to remove both for the motion to remove and for the motion for class certification.

The counterclaims against the Named Plaintiffs and their counsel may have presented at least a potential conflict of interest. The counterclaims charge that the Named Plaintiffs and their counsel violated federal securities laws governing proxy solicitations when they sent a letter to class members on September 27, 1996. However, the counterclaims are moot in light of the August 11, 1998 decision, which invalidated the vote approving the transaction.[5]

The movants' contention that the Named Plaintiffs do not understand the claims well enough to represent the class can also be quickly rejected. The court in *Gammon* rebuffed a similar challenge to the adequacy of the class representative, noting that the Seventh Circuit has stated, "[T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S.Ct. 845, 847–48, 15 L.Ed.2d 807 (1966), that the named plaintiff did not understand her complaint at all, could not ex-

---

(b)(1)(B).

4. As noted above, the Seventeenth Claim of the CTASC seeks only a declaratory judgment that the defendants are not entitled to indemnification.

5. The dismissal of the counterclaims is discussed in separate opinion issued today, which addresses the defendants' Motion to Dismiss Counts VI–IX of Plaintiffs' Complaint as Moot, and for Summary Judgment as to Certain Claims.

plain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir.1981) (citations omitted). The Named Plaintiffs' basic understanding of their roles as class representatives and of the claims is sufficient for them to represent the class adequately.

More troubling is the allegation that counsel for the Named Plaintiffs has not kept the Named Plaintiffs informed about settlement negotiations. The movants argue that the depositions of the Named Plaintiffs make clear that they are largely unaware of the settlement negotiations, including the settlement demand made by their counsel. The depositions indicate that the Named Plaintiffs were not well-informed about a settlement demand apparently made by their counsel at the outset of this action and in August 1997. However, the depositions also indicate that the Named Plaintiffs were informed about settlement negotiations in August 1997 and that they were informed of the defendants' settlement proposal. This conflicting evidence raises some concerns whether class counsel is adequately consulting the Named Plaintiffs regarding settlement. However, these concerns are insufficient to find that the Named Plaintiffs and their counsel are inadequate to represent the class.

The movants' contention that two of the Named Plaintiffs misrepresented their conditions in order to avoid having to come to Chicago for depositions is also troubling. In an affidavit, Named Plaintiff Ben O. Carroll stated that it would be an "extreme hardship" for him to travel to Chicago because of his health conditions and because he is the primary caretaker for his elderly mother-in-law. Named Plaintiff M. Barbara Christman stated that it would be "painful and medically inadvisable" for her to travel to Chicago. She suffers from arthritis and high blood pressure. At a hearing on the motion to compel the plaintiffs to appear for their depositions in Chicago, this court expressed its frustration with the conclusory affidavits and urged class counsel to ensure that the plaintiffs were not exaggerating their difficulties. Movants argue that the depositions of Named Plaintiffs Carroll and Christman which were taken in Albany, Georgia and San Diego, respectively, establish that Carroll and Christman exaggerated the extent of the hardship they would suffer if they had to travel to Chicago. The depositions indicate that in the past Carroll has been able to make arrangements for other family members to take care of his mother-in-law and that Christman maintains a reasonably active lifestyle despite her arthritis. Clearly, class counsel did not fully inform the court of the nature of the circumstances that made it difficult for Christman and Carroll to travel to Chicago. However, even after considering the deposition testimony of Carroll and Christman, this court believes it would have posed a hardship for them to travel to Chicago for depositions of dubious value. While the affidavits of Carroll and Christman were, at the very least, incomplete, they were not so materially misleading as to warrant removing Carroll and Christman as class representatives.

Finally, the Individual Plaintiffs argue that the Named Plaintiffs, through their counsel, are advocating positions contrary to the interests of the class. In the papers on class certification, the Individual Plaintiffs (and the defendants) offer a much more detailed critique of the Named Plaintiffs' conduct of this action. Therefore, this aspect will be discussed in the following section.

### B. Challenges to Adequacy Raised in Class Certification Briefs

Defendants and the Individual Plaintiffs argue that conduct by the Named Plaintiffs (or more accurately, by their counsel) demonstrates that they are not adequate representatives of the class. Defendants and the Individual Plaintiffs attack the Named Plaintiffs for a variety of conduct in the prosecution of this action.

Defendants and the Individual Plaintiffs criticize the Named Plaintiffs for their delay in moving for class certification on the new claims in the SASC and in moving for certification for a damages class under Rule 23(b)(3).

Rule 23 mandates that class certification be sought "[a]s soon as practicable after the commencement of an action brought as a class action." Fed.R.Civ.P. 23(c)(1). Defendants and the Named Plaintiffs cite to several cases in which delay in seeking certification was mentioned as a reason for finding plaintiff inadequate. *See, e.g., Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 704 (7th Cir.1993).

Here, this is not a case where the plaintiffs completely failed to pursue class certification. The Named Plaintiffs moved promptly to certify the class on the claims in the original complaint, though they did not move to certify the class under Rule 23(b)(3). The Named Plaintiffs filed the SASC in April 1997. The Named Plaintiffs moved for appointment as lead plaintiffs under the Private Securities Litigation Reform Act and sent notice of the pending action through the *Business Wire.* The Named Plaintiffs were appointed lead plaintiffs and their counsel was named lead counsel. However, the Named Plaintiffs failed to move to certify the additional claims raised in the SASC until May 1998. The Named Plaintiffs did not move to certify the class under Rule 23(b)(3) until they filed the present motion. Shortly after the Named Plaintiffs moved for certification, the court requested that the Named Plaintiffs withdraw the motion for certification in the vain hope that the parties' time and energy could more productively be spent attempting to resolve this litigation.[6] The May 1998 motion for class certification sought certification only under Rule 23(b)(1) and (b)(2).

The Individual Plaintiffs argue that the Named Plaintiffs delayed seeking certification of the class under Rule 23(b)(3) in order to avoid the obligation of providing notice to the class and giving class members an opportunity to opt out. However, at least until the defendants agreed to an injunction on December 31, 1997, barring the General Partners from disposing of the assets of the limited partnerships (and perhaps until the August 11, 1998 decision in which the court ruled that the proxy voting procedure was invalid) it is arguable that the Named Plaintiffs' claims for injunctive relief—including preventing the consummation of the proposed transaction—predominated over the claims for damages. Thus, the Named Plaintiffs may have had some justification for waiting to move for certification under Rule 23(b)(3). Nevertheless, this court is extremely concerned that because of the delay in moving for certification, the limited partners have not received adequate notice[7] of this litigation and have not had the opportunity to opt out of this litigation. This delay does raise some questions about the adequacy of the Named Plaintiffs and their counsel.

The defendants and Individual Plaintiffs also criticize the Named Plaintiffs for their delay in offering an expert to support their claims that the proposed transaction was unfair. The Named Plaintiffs apparently are planning to rely on two experts to dispute the fairness of the transaction: one to perform a valuation of the assets of the limited partnerships and a second to evaluate the fairness of the proposed transaction. The first was timely disclosed. The second was not. The court had set a November 13, 1998 deadline, which pursuant to the Named Plaintiffs' request, was extended to November 27, 1998. The Named Plaintiffs failed to produce this expert by November 27, citing an unidentified conflict, but finally produced the report on January 14, 1999.[8]

---

**6.** Although Rule 23(c)(1) requires that class certification be sought as soon as practicable, courts may defer resolution of class certification for several reasons, including a belief that the parties may be able to resolve the litigation by settlement. *See* Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 7.16 (3d ed.1992).

**7.** In addition, the class members have not received notice because, consistent with their inability to agree on matters large and small, the parties have been unable to agree on an acceptable form of notice to the class. The Named Plaintiffs sought to communicate with the class in July 1997 and sought to send notice of the pendency of this action in September 1997, but the defendants objected and the parties were unable to agree on the wording of the notice.

**8.** The defendants have filed a motion to bar the Named Plaintiffs from offering the expert who will testify as to the fairness of the appraisal. In light of the May 1999 trial date, the court sees no material prejudice to defendants from this delay and denies the motion to bar.

Some background on the Named Plaintiffs' experts and the dispute over the fairness of the proposed transaction is in order. This litigation was initiated on September 18, 1996. Shortly thereafter, on October 2, 1996, this court held hearing on the Named Plaintiffs' motion for a preliminary injunction. This court and the defendants were prepared for an evidentiary hearing on the Named Plaintiffs' claim that the proposed transaction was unfair because the assets were undervalued. On the day of the hearing, the Named Plaintiffs informed the defendants and the court that they would not be going forward with the evidentiary hearing on the claim.

While the Named Plaintiffs may be technically correct that they have not, at least until recently, missed any court-imposed deadlines for disclosing their expert(s), the apparent failure of the Named Plaintiffs to obtain promptly an expert opinion on the fairness of the transaction raises serious questions. From the beginning of this litigation, the Named Plaintiffs have challenged the proposed transactions on both procedural and substantive grounds. This court agrees with the Named Plaintiffs that there were serious procedural flaws in the proposed transaction, as evidenced by this court's August 11, 1998 ruling invalidating the proxy voting procedure used to approve the transaction. In

addition, the partnership agreements contained an explicit prohibition on self-dealing, which the defendants attempted to circumvent by asking the limited partners to amend the partnership agreements at the same time the limited partners were voting on the proposed transaction. Nevertheless, there remain significant and unresolved questions whether the Named Plaintiffs will be able to establish that the proposed transaction was unfair.[9] If, as the defendants and the Individual Plaintiffs contend, the proposed transaction was the best alternative for the limited partners, then the Named Plaintiffs may have done a costly disservice to the limited partners.

In addition, the defendants and the Individual Plaintiffs argue that the valuation expert produced by the Named Plaintiffs has concluded that the assets of the limited partnerships are worth little more than the appraisal made by the firm of Cushman & Wakefield. The defendants employed Cushman & Wakefield to perform an appraisal to support the proposed transaction. Of course, the actual discrepancy is not insignificant— the Named Plaintiffs' expert concluded that the assets were worth approximately $92 million while the proposed transaction was for only $85 million.[10] As the defendants and

9. This court is aware that under ordinary circumstances, the probability of success on the merits should not be considered in ruling on a motion for class certification. In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court stated

We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.... This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such '(a)s soon as practicable after the commencement of (the) action....' In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International*, 452 F.2d 424 (C.A.5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action: 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' *Id.*, at 427.

*Eisen*, 417 U.S. at 177–78, 94 S.Ct. 2140. However, the circumstances here are atypical and require this court to consider the merits to some extent to ensure that the interests of the absent class members are being adequately protected. First, as noted above, there has been considerable delay by the Named Plaintiffs in moving for class certification. This case is now over two years old and the docket now contains over 500 entries. Second, the Individual Plaintiffs and the defendants have forced the court to consider the merits of the litigation by (1) arguing that the Named Plaintiffs and their counsel are inadequate because they have been conducting this litigation contrary to the interests of the class and (2) representing to the court that if the Individual Plaintiffs are appointed class representatives they will settle the litigation. Nevertheless, the court is keenly aware that all relevant evidence has not been presented to the court and that the impressions contained herein are based on imperfect information.

10. Of course, each party argues that the opposing party's expert used a flawed methodology for valuing the assets. The court lacks sufficient information to speculate as to the relative accuracy of the competing valuations.

the Individual Plaintiffs note, the disparities between the appraisals varied for the four limited partnerships. The disparities between the expert valuations of the third and fourth Brauvin funds were much less pronounced than the valuations for the first and second funds. Cushman & Wakefield valued the assets of "Brauvin I" at $23,198,450 while the Named Plaintiffs' expert placed their value at $26.5 million. Cushman & Wakefield valued the assets of "Brauvin II" at about $30,183,300 while the Named Plaintiffs' expert valued them at $33 million. Cushman & Wakefield valued the assets of "Brauvin III" at $19,129,150 while the Named Plaintiffs' expert valued them at $19.8 million. Finally, Cushman & Wakefield valued the assets of "Brauvin IV" at $12,489,000 while the Named Plaintiffs' expert valued them at $12,800,000.

While the Named Plaintiffs' expert found that Cushman & Wakefield undervalued the assets of the Brauvin partnerships, the attorneys' fees in this action will likely dwarf the recovery—if any—by the limited partners, and the potential risks to the limited partners from this litigation are substantial. The limited partners may be forced to indemnify the defendants for their attorneys' fees, and the assets of the limited partnerships may diminish markedly in value because they could not be sold during this litigation.[11] Because there is apparently little opportunity for the limited partners to sell or transfer their shares of the limited partnerships, the limited partners are hostages to this litigation.

The Individual Plaintiffs argue that the Named Plaintiffs are merely the pawns of class counsel and that the Named Plaintiffs have an insufficient stake in the litigation to protect the interests of the class. The Named Plaintiffs have together invested approximately $50,000 in the four Brauvin partnership funds.

By contrast, the Individual Plaintiffs include the largest individual stakeholder in the funds. The class representatives proposed by the Individual Plaintiffs include the Fabick Employees' Profit Sharing Plan,

which has invested $300,000 in Brauvin I, $200,000 in Brauvin II, and $542,000 in Brauvin IV, and James Weiss, a broker whose clients have invested over $3,000,000 into the Brauvin partnerships. The Individual Plaintiffs note that the Trustees of the Fabick Plan are subject to the fiduciary responsibility standards of the Employee Retirement Security Act of 1974 ("ERISA") in administering the plan. In fulfilling their obligations, the Trustees have employed professional investment advisors and reviewed financial reports and investment proposals. There is no question that the representatives proposed by the Individual Plaintiffs are far more sophisticated investors than the Named Plaintiffs. The representatives proposed by the Individual Plaintiffs are almost certainly more likely to appreciate the threat to the assets of the limited partnerships if the assets are not sold in the near future. In addition, the representatives proposed by the Individual Plaintiffs are in all likelihood better able to weigh the risks of proceeding with the litigation versus agreeing to a settlement.

If the Individual Plaintiffs had moved to be appointed as class representatives at the outset of this litigation or had moved to be appointed as lead plaintiffs when the SASC was filed in April 1997, this court would almost certainly have granted their motion. However, the Individual Plaintiffs took no action until the end of 1997, when they filed an appearance and moved for the removal of the Named Plaintiffs and their counsel. The Named Plaintiffs had already been appointed as class representatives on the first six counts and had been appointed lead plaintiffs under the provisions of the PSLRA. The Individual Plaintiffs argue that the notice by the Named Plaintiffs—a press release to the *Business Wire*—was insufficient to establish notice under the PSLRA. However, this court previously found that such notice was sufficient. Although the representatives proposed by the Individual Plaintiffs maintain that they never saw or received the notice, they admit that they were aware of the litiga-

---

11. Indeed, the defendants recently filed a supplemental brief informing the court that Brauvin III is in substantial danger because of the bankrupt-

cy of the largest tenant and the decision by another tenant to cease operations at a site owned by Brauvin III.

tion by September 30, 1996 (*see* Weiss Aff. ¶ 16 and Borlinghaus Aff. ¶ 37, attached as Exs. A and B to the Individual Plaintiffs Mem. in Opp. to Representatives Proposed by Class Counsel for Rule 23 Certification) or by March 31, 1997 (*see* Fichter Aff. ¶¶ 15–17, attached as Ex. C). The evidence of record further establishes that defendants were in communication with the Fabick trustees about the proposed transaction, and it is inconceivable that the Individual Plaintiffs were not fully and timely aware of their rights to seek lead plaintiff status under the PSLRA.

The Individual Plaintiffs argue that under the PSLRA they are entitled to a presumption that their proposed representatives are the "most adequate" plaintiffs. The Individual Plaintiffs are mistaken. The PSLRA provides in relevant part:

(3) Appointment of lead plaintiff

  (A) Early notice to class members

  (i) In general

  Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—

    (I) of the pendency of the action, the claims asserted therein, and the purported class period; and

    (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

       * * *

  (B) Appointment of lead plaintiff

  (i) In general

  Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the mem-

ber or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

       * * *

  (iii) Rebuttable presumption

  (I) In general

  ■   Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—

    (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

    (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B). The PSLRA contemplates that a lead plaintiff will be appointed early in the litigation. The PSLRA requires that notice be filed within 20 days after the complaint is filed, that motions for appointment as lead plaintiff be filed within 60 days after the notice is published, and that the court consider any such motions within 90 days after the notice is published. The Individual Plaintiffs seem to believe that they can wait until class certification to assert their presumptive status as most adequate plaintiff. However, the presumption in the PSLRA applies to the appointment of a lead plaintiff. It is not an open-ended presumption that the largest stakeholder can assert whenever it wants to seize control of the litigation. The Individual Plaintiffs never made a motion for appointment as lead plaintiff and therefore are not entitled to a presumption that they are the most adequate plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). The Named Plaintiffs and their counsel have been managing this litigation from the outset and have already

been appointed as lead plaintiffs and lead counsel, respectively. As long as they can establish that they meet the requirements of Rule 23, they are entitled to remain in control.

In addition, while the sophistication and larger investment of the representatives proposed by the Individual Plaintiffs might ordinarily make them "more adequate" class representatives, this court has serious doubts that the Individual Plaintiffs' proposed settlement would be fair to the class members. As noted above, the Individual Plaintiffs and the defendants have represented to this court that if the representatives proposed by the Individual Plaintiffs are appointed to represent the class, they will settle this lawsuit. The defendants and the Individual Plaintiffs agreed on a settlement proposal, but the proposal was rejected by the Named Plaintiffs. This proposed settlement was attached to the Named Plaintiffs' Reply Brief in support of class certification.

■ The Individual Plaintiffs object, arguing that the court should not consider the settlement proposal in ruling on the motion for class certification. The Individual Plaintiffs first argue that consideration of the settlement proposal would violate Rule 408 of the Federal Rules of Evidence. Rule 408 prohibits the use of evidence of offers to compromise the litigation or of settlement negotiations only when the evidence is offered "to prove liability for or invalidity of the claim or its amount." Fed.R.Evid. 408. Here the settlement proposal is not being offered for these purposes, so Rule 408 does not apply. Second, the Individual Plaintiffs argue that this is merely a settlement proposal and not a final settlement and that it would be improper for the court to transform the motion for class certification into an "ad hoc fairness hearing." However, the Individual Plaintiffs have represented to the court that, if their representatives are appointed, they will settle this litigation. They have harshly criticized the Named Plaintiffs for failing to compromise this litigation. The Individual Plaintiffs have in effect argued

that their willingness to compromise the litigation makes them more adequate representatives. The proposed settlement reveals what terms the Individual Plaintiffs believed were acceptable for settling this action and provides an indication of whether the Individual Plaintiffs would vigorously pursue claims on behalf of the class if appointed as class representatives.

If this court were to appoint the representatives proposed by the Individual Plaintiffs as class representatives, there would be substantial questions about the propriety of the settlement negotiations. The Individual Plaintiffs were negotiating a class settlement at a time when they were not representing the class. It is questionable if they were negotiating from a position of strength. *See In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (noting that "unauthorized settlement negotiations create the possibility of negotiation from a position of weakness by the attorney who purports to represent the class.")[12] In addition, the Named Plaintiffs have provided evidence that counsel for the defendants previously represented counsel for the Individual Plaintiffs in a lawsuit. At the very least, if the court were to appoint the Individual Plaintiffs, these circumstances would require the court to permit the Named Plaintiffs discovery into the settlement negotiations and the relationship between the defendants, their counsel, the Individual Plaintiffs, and their counsel.

However, even more troubling are the substantive terms of the proposed settlement. The proposed settlement would fully indemnify the defendants for their legal costs and would hold them harmless for all past conduct, though the defendants would be forced to disburse the accumulated earnings of the limited partnerships. The primary concession to the class members appears to be the defendants' agreement to forfeit the $850,000 break-up fee provided for in the proposed transaction. However, in light of the near certainty that the proposed transaction will not be consummated (and of evidence that

---

12. While this court was not privy to the settlement negotiations, it is hard to believe that the pro-settlement posture of the Individual Plaintiffs, together with their efforts to displace the Named Plaintiffs, did not seriously undermine the bargaining strength of the Named Plaintiffs.

the defendants may have lacked sufficient capital to consummate the transaction anyway) it is doubtful the defendants would be entitled to the fee. The primary benefit to the limited partners is that the assets of the partnerships could likely be disposed of in the relatively near future. The limited partners would get nothing for the serious procedural problems with the defendants' attempts to obtain approval for the proposed transaction.

The Named Plaintiffs charge that the proposed settlement is a collusive settlement agreement. While, as noted above, there would be some questions about the propriety of the settlement negotiations, there is little basis for believing that the settlement is collusive. Instead, the proposed settlement reveals the strong belief of the Individual Plaintiffs and the defendants that this litigation is harmful to the limited partners. Since the Individual Plaintiffs first became involved in this action, they have made clear that they strongly disagree with the Named Plaintiffs as to litigation strategy. Indeed, the Individual Plaintiffs have a fundamental dispute with the Named Plaintiffs—the Individual Plaintiffs believe that the proposed transaction with Brauvin L.L.C. was fair and was in the best interest of the limited partners. The Named Plaintiffs emphatically do not.

█ It is not unusual in class actions for some class members to believe that an action should not be brought. A dispute within the class over whether an action should be pursued does not preclude class certification, as long as the views of the dissenting class members are adequately represented. *See Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470, 484–87 (5th Cir.1982) (reversing district court and granting class certification despite potential disagreement within class about whether suit should be brought). These dissenting class members often have their views adequately represented by the defendants in the action. *See id.* at 487. Here, the Individual Plaintiffs do not believe that this action should have been filed

and do not believe that it should be maintained.[13]

Denying the Named Plaintiffs' motion for class certification, removing the Named Plaintiffs as class representatives for the first six claims, and appointing the Individual Plaintiffs as class representatives would essentially be a decision that the litigation is without merit. This court cannot reach such a drastic result at this time. The Named Plaintiffs have succeeded on their motions to have the proxy voting procedure declared invalid and to bar the General Partners from advancing partnership funds to defend this litigation. Defendants and the Individual Plaintiffs belittle these victories, arguing that the Named Plaintiffs' success on the proxy voting claim makes it more difficult for the limited partnerships to dispose of their assets and that the ruling on advancement does not guarantee that the defendants will not be entitled to indemnification in the future. Nevertheless, the Named Plaintiffs' successes highlight the questionable conduct by the defendants in connection with the proposed transaction.

While the court long ago made clear its belief that this action should be settled so as to avoid potential damage to the limited partners, this court cannot force the parties to settle this case. This court has not been privy to the settlement negotiations or the discussions with the special master and has no basis for believing any party's claims that the other is obstructing settlement; indeed, the Special Master indicated the contrary. Nevertheless, by failing to resolve this litigation, the Named Plaintiffs and the defendants have jeopardized the investments of the limited partners. In addition, the defendants have potentially increased their exposure if they are found liable for breaching their fiduciary duties. As indicated above, the Named Plaintiffs' delay in obtaining class certification and significant delay in producing an expert to testify as to the fairness of the proposed transaction raise questions about the adequacy of the Named Plaintiffs, and, more specifically, about their counsel.

---

**13.** A Fabick representative informed the court that Fabick had reservations about the proposed transaction when it was initially announced but met with Brauvin Fund representatives and were persuaded to support the transaction.

However, in light of the alternative offered by the Individual Plaintiffs, the court must resolve its doubts in favor of certification of the class with the Named Plaintiffs as class representatives. A class is certified under Rule 23(b)(1) and (b)(2) for claims Six through Seventeen of the CTASC. A class is certified under Rule 23(b)(3) for claims One through Sixteen of the CTASC. The class shall consist of the limited partners of the Brauvin partnerships, with four subclasses consisting of the limited partners of the four Brauvin partnerships. In addition, the Individual Plaintiffs'·motion for appointment of their proposed representatives is denied, and the motions to remove the Named Plaintiffs and their counsel are denied.

## III. MOTION TO STRIKE APPEARANCE AND PAPERS FILED BY COUNSEL FOR THE INDIVIDUAL PLAINTIFFS AND MOTION BY INDIVIDUAL PLAINTIFFS TO INTERVENE

The Individual Plaintiffs have filed an appearance pursuant to Rule 23. The Named Plaintiffs have filed a motion to strike the appearance and all papers filed by the Individual Plaintiffs, arguing that the appearance was not permissible under Rule 23. In response, the Individual Plaintiffs have moved to intervene.

Rule 23(a)(2) provides that "[i]n any action maintained under [Rule 23(b)(3)] ... any member who does not request exclusion may, if he desires, enter an appearance through his counsel." Fed.R.Civ.P. 23(a)(2). At the time these motions were filed, this action was not being maintained under Rule 23(b)(3). The class had been certified, for six counts, only under Rule 23(b)(1) and (b)(2). Now, however, certification has been granted under Rule 23(b)(3). Therefore, an appearance by the counsel for the Individual Plaintiffs is now appropriate under Rule 23(a)(2).[14] However, even under Rule 23(a)(2), a party filing

an appearance must still intervene pursuant to Rule 24 before participating as a party.

Rule 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).

The Named Plaintiffs and the Individual Plaintiffs apparently share the same goal—realizing the maximum value for the assets of the limited partnerships. However, they vigorously dispute how this should have been and should be done. The Individual Plaintiffs argue that this litigation should never have been initiated and that the proposed transaction with Brauvin L.L.C. was fair. The Individual Plaintiffs' position in this action has often been the same as that of the defendants. See Horton, 690 F.2d at 487. The defendants are arguing that the proposed transaction was fair. Similarly, before this court's ruling on August 11, 1998, the defendants, like the Individual Plaintiffs, argued that proxy voting was permissible. However, the Individual Plaintiffs' interests are not identical to those of the defendants. For example, the Individual Plaintiffs have an interest in limiting or avoiding altogether indemnity for the legal costs of the defendants. In addition, given this court's questions about whether the Named Plaintiffs are properly weighing the financial risks to the limited partners in pursuing this litigation, this court would find it helpful to hear the perspective offered by the Individual Plaintiffs. The court wants to ensure that it hears from those class members who disagree with the positions advocated by class counsel.

---

14. Because the court has already ruled on motions in which the Individual Plaintiffs have filed papers and because of the delay by the Named Plaintiffs in moving for certification under Rule 23(b)(3), the court denies the motion to strike the papers filed by counsel for the Individual Plaintiffs.

Therefore, the Individual Plaintiffs may intervene in this action. Of course, particularly if this litigation should proceed to trial, this court may take steps to maintain an orderly process and prevent duplicative filings and presentation of evidence. *See* Fed. R.Civ.P. 23(d)(1) and (3).

### *CONCLUSION*

The Named Plaintiffs' motion for class certification [473] is granted. The Individual Plaintiffs' motion for appointment of Fabick and James Weiss as class representatives [508] is denied. The defendants' and Individual Plaintiffs' motions to remove the Named Plaintiffs and their counsel [352 and 356] are denied. The motion to strike the appearance and all papers filed by the Individual Plaintiffs [387–1 and 387–2] are denied. The Individual Plaintiffs' motion to intervene [412] is granted. The motion by defendants to bar plaintiffs' "fairness" expert and other experts that were required to be disclosed on November 27, 1998 [496] is denied.