Francisco "Daniel" FLORES, Constantino "Fernandez" Hernandez, Enrique Hernandez, Valeriano "Fernando" Salvador, and Alejandro Jiminez, on behalf of themselves and others similarly situated, Plaintiffs,

v.

ANJOST CORP. d/b/a Zaro's Bakery, Stuart D. Zaro, and Joseph Zaro, Defendants.

No. 11 Civ. 1531 (CM).

United States District Court, S.D. New York.

June 19, 2012.

Robert Louis Kraselnik, New York City, C.K. Lee, New York City, for Plaintiffs.

Kristine A. Sova, New York City, Michael J. Volpe, New York City, Adam Gordon Possidente, New York City, Megan Hope Mann, New York City, for Defendants.

### DECISION AND ORDER GRANTING (IN MODIFIED FORM) PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

McMAHON, District Judge:

Plaintiffs—Francisco Flores, Constantino "Fernandez" Hernandez, Enrique Hernandez, Alejandro Jiminez, and Valeriano Salvador—commenced this putative class and collective action on March 7, 2011, claiming that Defendants—Anjost Corporation (d/b/a Zaro's Bakery), Joseph Zaro, and Stuart D. Zaro—violated various provisions of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

On November 1, 2011, without opposition by Defendants, Magistrate Judge Peck granted Plaintiffs' motion to conditionally certify the FLSA collective action on behalf of Defendants' "tipped employees."

On January 12, 2012, after class discovery, Plaintiffs filed this motion seeking class certification of their NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs propose numerous different classes, each of which is broader than the conditionally certified FLSA collective action. Plaintiffs also request authorization to send Plaintiffs' proposed notice to all prospective class members, as well as an order directing Defendants to produce the names, last known addresses, alternate addresses, all telephone

numbers, positions and dates of employment of all class members.

Plaintiffs amended their complaint for the second time on January 30, 2012 (the "SAC").

For the reasons that follow, classes are certified, but not precisely as Plaintiff wanted.

## BACKGROUND

### I. The Parties

Plaintiffs are current and former employees of Defendants. With the exception of Hernandez and Salvador, who also work as "stock persons," all either work or worked as delivery workers at Defendants' store located at 920 Broadway in Manhattan. Hernandez also works at Defendants' 625 Eighth Avenue location in Manhattan. They all state that they are "tipped employees."

Defendant Anjost Corp. is a New York corporation with its principal executive office located at 138 Bruckner Boulevard, Bronx, New York. (SAC ¶ 10.)

Defendant Stuart D. Zaro is the Chief Executive Officer of Anjost Corp. (*Id.* ¶ 12.)

Defendant Joseph Zaro is the President of Anjost Corp. (*Id.*)

Defendants own and operate a catering business, a baking factory, and a number of retail bakeries under the "Zaro's" brand throughout the New York metropolitan area. (*Id.* ¶ 11.) These locations include four retail bakeries in Grand Central Station, two in New York Penn Station, one in the Port Authority Bus Terminal, and one in Newark Penn Station (in New Jersey). (Volpe Decl. ¶ 5; SAC ¶ 11.) Defendants also own four bakeries in New York. (SAC ¶ 11.)

### II. Defendants' Allegedly Illegal Policies

Plaintiffs allege a broad swath of NYLL violations in their second amended complaint. (*See id.* ¶¶ 19–26.) Plaintiffs claim that these violations resulted from Defendants' general corporate policies, or from a lack of understanding of the NYLL.

### A. Policies Affecting the Tipped Employees

Plaintiffs allege that Defendants, in violation of the NYLL: (1) failed to pay its tipped employees (i.e., delivery workers) properly calculated overtime wages; (2) failed to pay the correct minimum wage; (3) improperly withheld portions of tips rightfully due to the tipped employees; and (4) failed to pay Plaintiffs' tips in a timely fashion.

In support, Plaintiffs' affidavits allege that: (1) Defendants paid them below the prevailing minimum wage; (2) Defendants withheld and retained tips earned by named Plaintiffs; (3) Defendants did not notify Plaintiffs that Defendants were taking a tip credit in any fashion; and (4) Plaintiffs' wage statements did not disclose the tip credit allowances taken. (*See* Plaintiffs' Affs. (ECF Nos. 51–55).) In these affidavits, Plaintiffs assert that they witnessed Defendants subjecting all other tipped employees to the same policies. Plaintiffs do not explain how they were possibly aware of the payment practices at every other of Defendants' locations, and the cookie-cutter nature of the affidavits is suspicious. But, as discussed below, Plaintiffs offer more than just these affidavits.

*Overtime claims.* The NYLL requires that for each hour an employee works in excess of 40 hours in a given week, employers must pay an overtime wage that is at least one and one-half times the employee's *regular* rate. 12 N.Y.C.R.R. § 146–1.4 (emphasis added). For employees paid with a tip credit, the correct overtime rate is one and a half times the prevailing minimum wage, with the relevant tip credit allowance then subtracted. *See id.*

Plaintiffs allege Defendants incorrectly calculated their overtime wage rate. Plaintiffs' pay stubs confirm this: Defendants incorrectly calculated the overtime wage rate by multiplying the tip credit minimum wage by one and a half. (Pls.' Exs. 1–3.) The form of these pay stubs were the "same for all the company," including the "delivery people." (Lee Decl. Ex. 1 ("Marcotrigiano Dep.") 42:15–19.) Moreover, Mr. Marcotrigiano—Defendants' controller, responsible for, among other things, Defendants' payroll and minimum wage requirements—testified that

Defendants only recently began to calculate overtime rates for tipped employees correctly. (Marcotrigiano Dep. 34:10–35:12.)

■ *Minimum wage claims.* The NYLL allows employers to credit a portion of an employee's tips as allowances against the minimum wage requirement when certain conditions are met. NYLL § 652(4); 12 N.Y.C. R.R. § 146–1.3. Prior to January 1, 2011, the employer was required to "furnish to each employee a statement with every payment of wages listing ... allowances ... claimed as part of the minimum wage." 12 N.Y.C.R.R. § 137–2.2 (repealed January 1, 2011). Since January 1, 2011, an employer may take a tip credit and pay employees a reduced minimum wage if, among other things, the employer has notified the employee of its intention to take the tip credit. *See* 12 N.Y.C.R.R. ¶¶ 146–1.3, 146–2.2; *Benavidez v. Plaza Mexico Inc.*, No. 09 CIV. 5076 THK, 2012 WL 500428, at *6 (S.D.N.Y. Feb. 15, 2012).

Plaintiffs allege that Defendants never notified them about their intention to take a tip credit. (Pls.' Affs. ¶¶ 5–6.) Plaintiffs' pay stubs also do not state the amount of tip credit taken, and the form of the pay stubs was common to all employees. (Pls.' Exs. 1–3.) Mr. Marcotrigiano also appears to admit that Defendants had not followed the legal minimum wage requirements in the past:

Q: When you became aware of the legal minimum wage requirements, did you change the practices at Zaro's?

A: Immediately.

(Marcotrigiano Dep. 51:3–6.)

*Improper delay in payment of tips.* NYLL § 191 requires that a manual worker be paid weekly and not later than seven calendar days after the end of the week in which the wages were earned.

Here, Mr. Marcotrigiano testified that Defendants' had a general corporate policy to "pay tips every other week." (*Id.* at 42:3–14.)

*Improper tip withholding.* Under NYLL § 196–d, no employer shall "demand or ac-

cept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

Plaintiffs produced evidence—in the form of Mr. Marcotrigiano's testimony and an email to Stuart and Joseph Zaro—that Defendants had a general corporate policy to retain at least 20% of service charges and all delivery charges in violation of the NYLL. (*See* Marcotrigiano Dep. 36:12–37:20 (stating that Zaro's has a policy to retain 20% of service charges); Lee Decl. Ex. 2 ("We charge a 10% delivery fee of which 5% stays with Zaro's and the other 5% is paid out as tips.").)

## B. Policies Affecting all Non–Exempt Employees

Furthermore, Plaintiffs allege that Defendants failed to pay all its employees—at least the ones who were not exempt from the NYLL's requirements (inclusive of the tipped employees)—an extra hour of pay at the basic minimum hourly wage rates for days during which they worked more than 10 hours, i.e., "the spread of hours premium." Plaintiffs claim this broad class of employees was also illegally forced to pay for the costs of their uniforms, and were provided with improper wage statements.[1] Again, Plaintiffs allege that these violations resulted from Defendants' general corporate policies, or lack of understanding of the NYLL.

■ *Spread of Hours Wages.* The "spread of hours" provision in the New York regulations requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the spread of hours in a day exceeds ten hours. 12 N.Y. Comp.Codes R. & Regs. § 142–2.4. Prior to January 1, 2011, "By its plain language, section 142–2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor." *Espinosa v. Delgado Travel Agency, Inc.*, No. 05

---

[1] In their Reply, Plaintiffs contend for the first time in this lawsuit that Defendants also failed to provide proper *annual notices* to non-exempt employees as required under NYLL § 195(1). Plaintiff did not plead this in the SAC. Therefore, I cannot certify a class on this claim.

CIV. 6917(SAS), 2007 WL 656271, *2 (S.D.N.Y. Mar. 2, 2007); *see also Almeida v. Aguinaga,* 500 F.Supp.2d 366, 369–70 (S.D.N.Y.2007) (collecting cases). Effective January 1, 2011, however, employers are required to pay a spread of hours premium for "all employees in restaurants and all-year hotels, *regardless* of a given employee's regular rate of pay." 12 N.Y.C.R.R. § 146–1.6(d) (emphasis added).[2]

In support of their spread of hours claims, Plaintiffs again direct the Court to the named Plaintiffs' affidavits and pay stubs, as well as Mr. Marcotrigiano's deposition testimony. This evidence is sufficient at this stage to find that the claims of the named Plaintiffs arise from the same course of events, and were directed at both named Plaintiffs and the proposed class members. The pay stubs in evidence do not show the payment of the spread of hours premium—or a line item for spread of hours wages in general—when, for example, Fernandez worked over 10 hours in a day. (Lee Decl. Ex. 3.) This accords with Mr. Marcotrigiano's testimony that he was unaware of the spread of hours premium. (Marcotrigiano Dep. 27:22–28:2, 28:12–14, 34:4–7 (Q: "Do you know if he paid his spread of hours premium that day?" A: "I don't know what spread of hours is."), 43:8–11.) Mr. Marcotrigiano is Defendants' controller, and is responsible for Defendants' payroll function and minimum wage requirements. (*Id.* 6:18–7:8.) Viewed in light of Plaintiffs' affidavits and the pay stubs, it is a reasonable inference that, if the person in charge of wage compliance was not aware of the requirement, the requirement was not obeyed.

*Wage Statement Claims.* NYLL § 195(3) requires that all wage statements include, among other things, the employee's rates of pay, deductions, allowances, and overtime rate of pay.

Mr. Marcotrigiano testified that the form of the pay stubs, i.e., wage statements, is the "same for the *entire company.*" (Marcotrigiano Dep. 42:15–43:19 (emphasis added).)

*Uniform Claims.* Prior to January 1, 2011, New York law provided that "No allowance for the supply, maintenance, or laundering of required uniforms shall be permitted as part of the minimum wage." 12 N.Y.C.R.R. § 137–1.8 (repealed January 1, 2011). Since January 1, 2011, the law requires that employers pay for their employees' required uniforms "regardless of a given employee's rate of pay." 12 N.Y.C.R.R. §§ 146–1.7, 146–1.8.

Plaintiffs claim that Defendants "improperly caused Class members to pay for their uniforms by deducting directly from Class members' compensation." (Mot. for Class Certification at 3.) But at his deposition, Mr. Marcotrigiano merely testified that delivery and retail division employees were charged for a t-shirt when they started with the company. (*See* Marcotrigiano Dep. 40:21–41:10.) Thus, there is only evidence in the record of a general uniform policy for delivery and retail division employees.

Plaintiffs have not provided any evidence that Defendants have or had a common plan or policy to force *all* non-exempt employees to purchase a uniform when they start work. Plaintiffs' affidavits stating that they "personally observed that all other non-exempt employees were also required to pay for their uniforms" do not provide a basis for these observations (for example: "I frequently had opportunity to discuss uniform policies with bakers during my trips to the bakery") and are simply too conclusory to rely on. Mr. Marcotrigiano's testimony is likewise unhelpful on this point. When directly asked if Zaro's had a policy to charge *all* employees for a t-shirt when they started work, Mr. Marcotrigiano testified: *"Not necessarily, maybe* a hat or T-shirt." (Marcotrigiano Dep. 41:14–17 (emphasis added).). Plaintiffs did not seek to clarify this answer. At the

---

**2.** "The term restaurant includes any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto. The term restaurant includes but is not limited to restaurant operations of other types of establishments, restaurant concessions in any establishment and concessions in restaurants." 12 N.Y.C.R.R. § 146–3.1.

time Mr. Marcotrigiano answered these questions, the only employees at issue in the case were the delivery workers. (Opp'n at 12 n. 3 (citing Compl. ¶¶ 27, 29, 31, 33, 35).)

## III. The Proposed Class(es)

Plaintiffs' proposed class definition takes a few different forms. In the SAC and Plaintiffs' moving papers, Plaintiffs alternatively define the proposed class as:

1. "All Zaro's employees ('Class Members') from March 7, 2005 until the present . . . ." (Mot. for Class Certification at 1–2; *see also* Lee Decl. Ex. A at 2 ("All employees who were employed by Zaro's Bakery at any time between March 7, 2005 and the present.").)

2. "All non-exempt persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case . . . ." (SAC ¶ 19; *see also* Reply at 1 ("All non-exempt employees employed by Zaro's ('Class Members') from March 7, 2005 until the present . . . ."), 5 ("All non-exempt employees employed by Defendants."), 8).

3. Plaintiffs also propose a class of all current and former non-exempt employees and a subclass of current and former tipped employees:

 Plaintiffs claim that all employees of Defendants were not paid their costs of purchasing and maintaining their uniforms, and their wage statements were inadequate. Further, *for a subclass of tipped employees,* Plaintiffs claim invalid tip sharing, minimum wage violations and overtime violations.

(Reply at 3 (emphasis added); *see also* SAC ¶ 22 (same); Mot. for Class Certification at 7.)

Plaintiffs never explained to the Court the different job titles that could be swept into this putative class action under the aegis of "all non-exempt employees." Defendants offer—without any record support—that the putative class purports to include "union members, factory workers, catering staff, re-tail employees, clerical staff, and delivery persons, among others." (Opp'n at 1.)

Plaintiffs abandoned the first proposed class definition in their Reply (the fact that they never proposed such a class in their SAC also makes me believe that its inclusion in the two above-cited documents was an oversight). In any event, I would not have certified a class of this scope and size, including, among others, employees presumably exempt from the NYLL's requirements, e.g., Defendants' management. *See Romero v. H.B. Auto. Grp., Inc.,* No. 11 Civ. 386 CM, 2012 WL 1514810, *16–20 (S.D.N.Y. May 1, 2012).

Plaintiffs have also removed other impediments to class certification. Plaintiffs have agreed to exclude employees who work in New Jersey—and who are thus not subject to the NYLL—from the proposed class members. (Reply at 8.) Plaintiffs have further agreed to waive liquidated damages as a condition of being certified as a class. (Mot. for Class Certification at 6 n. 1.)

Because Plaintiffs rely for the most part on the third proposed subclass, I will use this as my starting point.

On January 12, 2012, after the completion of class discovery, Plaintiffs filed this motion seeking class certification of their NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs also request authorization to send Plaintiffs' proposed notice to all prospective class members and for an order directing Defendants to produce the names, last known addresses, alternate addresses, all telephone numbers, positions, and dates of employment of all class members.

## DISCUSSION

### I. Plaintiffs' Motion for Class Certification is Granted, Albeit as Modified by This Order

Plaintiffs assert violations of the NYLL, and seek class certification pursuant to Federal Rule of Civil Procedure 23. For the foregoing reasons, I granted Plaintiffs' motion with respect to their proposed tipped employee subclass. It is beyond question that resolution of the claims it brings are

ideally suited for class determination, and Defendants do not contest this in any substantive way. As to Plaintiffs' proposed class of all non-exempt employees, I find that the class is too broad, but may be properly carved into two classes for certification.

## A. Legal Standard

### 1. Rule 23(a)

 In order to obtain class certification under Federal Rule of Civil Procedure 23, the class proponent bears the burden of showing that *each* of the requirements of subsection 23(a)—numerosity, commonality, typicality, and adequacy of representation— is, in fact, satisfied. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir.2008); *see also Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The numerosity requirement provides that the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quotations omitted); Fed.R.Civ.P. 23(a)(2). Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. Fed.R.Civ.P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (internal quotation marks omitted). The adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4); *see generally Brown v. Kelly,* 609 F.3d 467, 475 (2d Cir. 2010).

As the Supreme Court recently observed, the Rule 23(a) prerequisites "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes,* 131 S.Ct. at 2550 (internal citations and quotation marks omitted). If even one of the Rule 23(a) requirements is not met, certification must be denied.

 In addition, while Rule 23(a) does not expressly require that a class be definite in order to be certified, "There is an implied requirement that the membership of the class is identifiable and ascertainable." *Jankowski v. Castaldi,* No. 01CV0164 (SJF) (KAM), 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. (In re MTBE),* 209 F.R.D. 323, 337 (S.D.N.Y.2002)); *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 337 (S.D.N.Y.2004).

### 2. Rule 23(b)

In addition to satisfying the Rule 23(a) prerequisites, the class proponent must qualify the proposed class under one of the three subsection 23(b) categories. *Brown,* 609 F.3d at 476. Here, Plaintiff relies on subsection (b)(3).

 Under subsection (b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* (quoting Fed.R.Civ.P. 23(b)(3)). "As a general matter, the Rule 23(b) (3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau Cnty. Strip Search Cases,* 461 F.3d 219, 225 (2d Cir.2006) (internal quotation marks omitted).

 Courts determine whether Rule 23(b)(3) certification is appropriate by considering:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Oakley v. Verizon Commc'ns Inc.*, No. 09 CIV. 9175 CM, 2012 WL 335657, at *12 (S.D.N.Y. Feb. 1, 2012).

### 3. Burden of Proof

A district court must conduct a "rigorous analysis" to determine whether all the requirements of Rule 23 have been met. *Gen. Tel.*, 457 U.S. at 160–61, 102 S.Ct. 2364. In the Second Circuit, factual findings necessary to this determination are made under the preponderance of the evidence standard. "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir.2010); *Teamsters,* 546 F.3d at 202–03 ("The preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements.").

The same standard applies whether the issue is independent of or overlaps with a merits issue in the case. *Id.; see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41–42 (2d Cir.2006). The certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41.

"A motion for class certification should not ... become a mini-trial on the merits." *Lewis Tree Serv., Inc. v. Lucent Techs.*, 211 F.R.D. 228, 231 (S.D.N.Y.2002). "The dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Kowalski v. YellowPages.com, LLC*, No. 10 CIV. 7318 PGG, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012) (quoting *Lucent Techs.*, 211 F.R.D. at 231). In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide "whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common."* *Myers,* 624 F.3d at 549 (emphasis added).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 124 (S.D.N.Y.2011) (quoting *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)).

### B. Plaintiff has Established Ascertainability

In addition to the explicit Rule 23 requirements, courts in this district have also grafted an implicit "ascertainability requirement" upon the certification process. *See, e.g., In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 30, 44–45; *Stinson v. City of N.Y.*, 282 F.R.D. 360, 367 (S.D.N.Y.2012); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139–40 (S.D.N.Y. 2012); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 305 (S.D.N.Y.2010); *Noble,* 224 F.R.D. at 337. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson,* 282 F.R.D. at 373 (quoting *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y.2008)). "Where any criterion is subjective, e.g., state of mind, the class is not ascertainable." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y.2010) (internal quotation omitted).

In other words, "the ascertainability requirement means that the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Stinson,* 282 F.R.D. at 373 (quotations and citation omitted). The standard for ascertainability "is not demanding." *Gortat v. Capala Bros., Inc.*, No. 07–CV–3629 (ILG), 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010). "It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* Further, "Class members need not be ascertained prior to certification, but must be ascertainable at some point in the case." *Noble,* 224 F.R.D. at 338.

Defendants argue Plaintiffs' proposed class is not ascertainable. They contend that the Court would be forced to conduct mini-trials without respect to each non-exempt employee "to decide if that employee was entitled to receive a spread of hours premium and did not receive such a premium, whether said employee was improperly charged for a uniform, and whether the employee received inadequate wage statements." (Opp'n at 7–8.)

*Noble* is instructive. In *Noble*, named plaintiffs proposed a class including "all non-exempt employees who were not paid overtime compensation for each hour worked in excess of forty hours per week." *Id.* at 341. The defendants argued that the proposed class would require mini-trials for each employee, because "it would be impossible to determine if an employee was a member of the class until there was an analysis of each employee's claim." *Id.*

The *Noble* court held that the class satisfied the implicit ascertainability requirement, because "certification is routinely granted where the proposed class definition relies in part on the consideration of the defendants' alleged liability." *Id.* at 341–42 (collecting cases); *see generally* 5–23 Moore's Federal Practice—Civil § 23.21[3][a] ("A reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition."). The court reasoned that, "Were it otherwise, the benefits of the class action mechanism would be significantly undermined because plaintiffs seeking relief based upon a defendant's alleged unlawful *practice or policy* might be precluded from collectively bringing suit." *Noble*, 224 F.R.D. at 342 (emphasis in original).

Here, the class that Plaintiffs eventually defined is similar to the proposed class in *Noble*. The class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements, *see Jankowski*, 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006); no subjective criteria is required to determine the class' contours. The fact that an analysis of Defendants' data is necessary does not render a class unascertainable. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012); *see also Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y.2003) ("The class can be identified through an examination of the individual files of each of the participants.")

I find that the proposed class satisfies the ascertainability requirement.

**C. Plaintiffs Have Established Numerosity**

Generally, a class composed of more than 40 members satisfies the numerosity requirement. *Cons. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). "Although a plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts, the movant must show some evidence of or reasonably estimate the number of class members." *Noble*, 224 F.R.D. at 338 (internal citations and quotation marks omitted). "Although evidence of exact size or identity of class members is not required, evidence of numerosity is nonetheless required." *Lewis v. Nat'l Fin. Sys., Inc.*, No. 06–1308 DRH/ARL, 2007 WL 2455130, at *8 (E.D.N.Y. Aug. 23, 2007) (internal citation omitted). Where a plaintiff's assertions of numerosity are based on pure speculation or bare allegations, the motion for class certification must fail. *See id.*

Plaintiffs aver that there are at least 40 individuals in their proposed class, and that this Court should thus presume numerosity. Plaintiffs' declarations claim that, during the past six years, there have been at least 40 delivery persons employed by Defendants, and 400 other non-exempt employees. (*Id.*) Their affidavits are weak; only *one* plaintiff—Enrique Hernandez—has been employed by Defendants since 2005 and has worked at more than one of Defendants' locations. (Hernandez Decl. ¶ 1.)

However, Plaintiffs also produce a spreadsheet created by Defendants which shows that Defendants have employed over

50 tipped employees and over 580 non-exempt employees during the time period of the proposed class. (Reply at 11 (citing Lee Decl. Ex. 8.)) The spreadsheet is enough to establish numerosity.

Defendants do not dispute the accuracy of the contents of the spreadsheet, but claim that that I cannot consider it on this motion for class certification. Defendants' arguments are not persuasive.

■ First, Defendants argue that the list is inadmissible under Federal Rule of Evidence 408, because it was provided "in advance of a non-binding, confidential mediation session between the parties." (Opp'n at 17.) Courts differ over whether the Federal Rules of Evidence apply on a motion for class certification.[3] However, Rule 408 only renders inadmissible a statement "made during compromise negotiations" for the purpose of either proving or disproving the "validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed.R.Evid. 408. Here, the spreadsheet—i.e., statement made during compromise negotiations—is not being offered for either of these purposes, but rather to demonstrate numerosity on a non-dispositive motion. *See Christman v. Brauvin Realty Advisors, Inc.*, 191 F.R.D. 142, 152 (N.D.Ill.1999) (holding that the court could consider a settlement proposal on a motion for class certification, because it was not being offered to prove liability for or the amount of the claim). Thus, Rule 408 does not apply in this situation.

■ Second, Defendants contend that the parties explicitly agreed to keep the spreadsheet confidential. They direct the Court to the email sent by Defendants' counsel to which the spreadsheet was attached, which states that "the document should not be distributed or published or otherwise considered evidence, an admission of liability, statement against interest or a concession of membership in any purported class." (Volpe Decl. Ex. 6.) This is not a confidentiality *agreement*. This email contained boilerplate language that did not condition receipt of the spreadsheet on acceptance of the email's terms. If there truly was a confidentiality agreement, Defendants have failed to produce it. Furthermore, I can consider the document as evidence on the issue of numerosity even if the parties agreed to keep it confidential.

Because the spreadsheet provides sufficient proof that there are well over 40 people in the proposed classes, I find that Plaintiffs have satisfied the numerosity requirement.

### D. Plaintiffs have Satisfied Commonality and Typicality for Certain Subclasses

■ Rule 23(a)(2) requires that there be "questions of law or fact common to the class," whereas Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." "As a practical matter, the two requirements tend to merge in the Second Circuit's class certification inquiry." *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y.2007) (citing *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2nd Cir.1999)). "The commonality and typicality requirements, togeth-

---

**3.** While there has not been any direct attention on this issue from the circuit courts of appeals, most district courts addressing this question have held that evidence need not be admissible under the Federal Rules of Evidence—or that the rules should not be applied strictly—on a motion for class certification. *See, e.g., Sherman v. Am. Eagle Exp., Inc.*, CIV. A. 09–575, 2012 WL 748400 (E.D.Pa. Mar. 8, 2012); *Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455 (S.D.Cal.2012); *Bell v. Addus Healthcare, Inc.*, No. C06–5188RJB, 2007 WL 3012507 (W.D.Wash. Oct. 12, 2007); *Carrier v. American Bankers Life Assur. Co. of Fla.*, Civ. No. 5–CV–430–JD, 2008 WL 312657, *3 (D.N.H. Feb. 1, 2008); *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 (N.D.Cal.2010); *Jenkins v. Macatawa Bank Corp.*, No. 1:03–CV–321, 2006 WL 3253305 (W.D.Mich. Nov. 9, 2006); *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 597 (D.Minn.1999). Other courts disagree, and have concluded that the evidence used on a motion for class certification must be admissible under the Federal Rules of Evidence. *See, e.g., Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 544 (D.Idaho 2010); *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F.Supp.2d 87, 95 (D.Mass.2010); *cf. Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (evidence rules apply to fairness hearings under Fed.R.Civ.P. 23(e)). I find the former cases more persuasive than the latter.

er, require Plaintiffs to show that they raise questions of fact or law, arising out of a single course of conduct or set of events, that are common to all putative class members and that their individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that the named plaintiffs will press the claims of all class members." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010). "Plaintiffs must produce some 'quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by a company-wide policy or practice of discrimination.'" *Eng–Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350(BSJ), 2009 WL 7311383, at *6 (quoting *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 95 (S.D.N.Y. 2006)).

■■■ Rule 23(a)(2) and (3) analysis has become stricter in light of the Supreme Court's recent decision in *Wal–Mart Stores, Inc. v. Dukes,* — U.S. —, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). *Dukes* instructs district courts that "What really matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (internal quotation and citation omitted) (emphasis in original). Therefore, in order for there to be a legitimate "cause to believe that all [of a proposed class'] claims can productively be litigated at once," not only must those claims depend on a common contention, but that "common contention ... must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Even so, "The weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases." *Morris v. Affinity Health Plan, Inc.*, No. 09 CIV. 1932 ALC, 859 F.Supp.2d 611, 616, 2012 WL 1608644, at *2 (S.D.N.Y. May 8, 2012) (collecting cases). Courts in this district have instead focused on whether the employer had company-wide wage policies that injured the proposed class. *See, e.g., Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) ("Unlike the claims in *Wal–Mart,* Plaintiffs' NYLL claims do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.") (quotations and citation omitted); *Espinoza,* 280 F.R.D. at 130 (distinguishing *Dukes,* and finding that plaintiffs' claims that "Defendants failed to pay minimum wages and overtime compensation as a result of certain policies and practices ... alleged a common injury that is capable of class-wide resolution"). And "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza,* 280 F.R.D. at 127 (collecting cases).

■■■ A district court "is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir.1993) (quoting *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993)). This Court has the discretion to create subclasses it deems appropriate. F.R.C.P. 23(c)(5). *See also Lundquist,* 993 F.2d at 14.

For the following reasons, I find that Plaintiffs have satisfied Rule 23(a)'s commonality and typicality requirements with respect to their proposed subclass, which I called the "Tipped Employee Class." I also find that Plaintiffs have satisfied commonality and typicality with respect to two additional classes, discussed below.

### 1. Plaintiffs Satisfy Commonality and Typicality for The Tipped Employee Class.

■■■ With regard to the proposed subclass, named Plaintiffs' claims and those members of the putative subclass arise from alleged common wrongs: Defendants' failure

to comply with the NYLL's minimum and overtime wage requirements, as well as its tip sharing rules and payroll dictates. As discussed above in Section II.A. of the Background, the evidence Plaintiffs produced is sufficient to demonstrate—by a preponderance—that Defendants have (or at relevant times had) common policies concerning these issues, which affected all the proposed subclass members.

Defendants do not bother to contest that they have—or had—these common policies regarding the proposed subclass. They do not contend that "all of the proposed [sub-]class members would rely on the same allegedly wrongful conduct of the defendants and muster the same legal arguments in support of their New York Labor Law claims." *La Belle Farm*, 239 F.R.D. at 371. Nor do they argue that putative subclass representatives are subject to unique defenses. *See Espinoza*, 280 F.R.D. at 124. Instead, as discussed below, Defendants focus their opposition on what they perceive as issues with Plaintiffs' claims about spread of hours, wage statements, and uniforms.

Thus, because Defendants have effectively conceded that Plaintiffs raise common questions about Defendants' general corporate wage policies, they have adequately demonstrated commonality and typicality for the Tipped Employee Class.

### 2. Plaintiffs' Proposed Class of "All Non-Exempt Employees" Must be Modified to Satisfy Commonality and Typicality

Plaintiffs also propose a class of "all non-exempt employees." Plaintiffs identify three questions common to this class under the NYLL, regarding whether Defendants: (1) improperly denied this class their spread of hour premium; (2) provided the class with improper wage statements; and (3) were required to reimburse the class for uniform costs.

Plaintiffs have only demonstrated adequacy and typicality for: (1) a class of non-exempt employees with respect to the spread of hour and wage statement claims, and (2) delivery and retail employees with respect to the uniform claims.

■ **The Spread of Hours and Wage Statement Class.** Plaintiffs demonstrate commonality and typicality with respect to all non-exempt employees for their spread of hours and wage statement claims. Defendants' lack of familiarity with the concept of spread of hours wages, along with Plaintiffs' affidavits and pay stubs showing that such payments were not made, is amenable to resolution in a class action.

Defendants do not contend that they have or had a policy of paying spread of hours wages for their non-exempt employees. It would have been extremely easy for Defendants to adduce any evidence that they had a policy of paying spread of hours wages as required by the NYLL—Defendants are in control of their own wage policies and records. Defendants only take issue with the quality of Plaintiffs' evidence. I agree that Plaintiffs could have presented stronger evidence, but the evidence they do provide is still sufficient to infer a common policy—or lack thereof—that affects the proposed class. That Defendants fail to deny Plaintiffs' charge merely bolsters my conclusion.

Defendants argue instead that the proposed class representatives are subject to "unique defenses" that should prevent the Court from finding typicality. Specifically, Defendants argue that the proposed class encompasses many employees who earn over the minimum wage, and employees who earn over minimum wage are not entitled to spread of hours wages. (Opp'n at 14.) As a matter of law, this is not wholly correct. But more important to our purposes on this motion, this is not the type of "unique defense" that bars collective certification of a class action, especially when there is evidence of a common policy.

The "unique defense" raised by Defendants predominately goes towards damages, and does not threaten to overwhelm the litigation with individual factual determinations. The "unique defense rule" is "not rigidly applied in this Circuit, and is intended to protect the plaintiff class—not to shield defendants from a potentially meritorious suit." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y.2010) (citing *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55

(S.D.N.Y.2009)) (internal alterations, quotation marks, and other citations omitted); *see also Robidoux,* 987 F.2d at 937 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). "The differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found, not the amenability of the plaintiffs' claims to the class action form." *La Belle Farm,* 239 F.R.D. at 371 (internal quotations omitted).

The common issue here is whether Defendants had a policy of not paying a spread of hours premium. This question is amenable to class resolution. There may be questions regarding whether the named Plaintiffs were due spread of hours pay for *all* weeks prior to January 1, 2011. In this, spread of hours wages are not so unlike overtime wages: an employer's liability for failure to pay overtime wages is not ascertained on a paycheck by paycheck basis—damages are. Unlike overtime, though, the Court needs to look at one factor beyond the number of hours worked: the employee's non-tip wage rate for the week. *See Chan,* 2006 WL 851749, at *21 (relying on a New York Department of Labor advisory letter, and holding that the spread of hours wages due to an employee was based on the total non-tip compensation earned *weekly* by the employees). This mechanical question can be easily resolved during a damages inquiry, if one is required, by resort to Defendants' pay records. *Cf. Almeida,* 500 F.Supp.2d at 370 (granting summary judgment in part on a spread of hours claim for the time period where a plaintiff made more than minimum wage, and denying summary judgment in part where plaintiff's wage could not be ascertained); *Li Ping Fu v. Pop Art Int'l Inc.,* No. 10 CIV. 8562 DLC AJP, 2011 WL 4552436, *7 (S.D.N.Y. Sept. 19, 2011) (discussing spread of hours premium in the context of a damages inquest), *report and recommendation adopted,* 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011). For

the period after January 1, 2012, this would not be a concern, because there are no "individual defenses" on this ground. Making these damage determinations stemming from a general corporate policy—or lack thereof—would hardly bog down the resolution of this action.

Plaintiffs have also demonstrated commonality and typicality on behalf of the proposed class with regard to their wage statement claims. Mr. Marcotrigiano could not have been clearer that the form of the pay stubs, i.e., wage statements, is the "same for the *entire company.*" (Marcotrigiano Dep. 42:15–43:19 (emphasis added).) Resolution of the legality of the common form of Defendants' wage statements is thus likely to produce common answers for the proposed class as a whole.

■ **The Uniform Claims Class.** As it stands, however, Plaintiffs' proposed class of all non-exempt employees is too broad with respect to their uniform claims.

Plaintiffs claim that Defendants "improperly caused Class members to pay for their uniforms by deducting directly from Class members' compensation." (Mot. for Class Certification at 3.) Nevertheless, as discussed above, there is only evidence in the record of a general uniform policy for delivery and retail division employees.

I find that Plaintiffs have satisfied the commonality and typicality requirement with respect to delivery and retail division employees (named Plaintiffs are delivery persons), because Mr. Marcotrigiano testified that the policies affecting these roles are the same. As to the remainder of Defendants' non-exempt employees, I conclude that Plaintiffs have failed to show, by a preponderance of the evidence, that the named Plaintiffs' uniform claims are common to the proposed class as a whole.

Defendants' argument that unique defenses bar class certification are, again, unavailing. They claim that, under the NYLL, uniform costs are only reimbursable if they cause employees' wages to drop below the minimum wage. (Opp'n at 14 (citing *Chan v. Triple 8 Palace, Inc.,* No. 03 Civ. 6048(GEL), 2006 WL 851749, at *22 & n. 39 (S.D.N.Y.

Mar. 30, 2006))); *see also Guan Ming Lin v. Benihana Nat'L Corp.*, 755 F.Supp.2d 504, 511 (S.D.N.Y.2010). For substantially the same reasons as with Plaintiffs' spread of hours claim, this is a damages issue that does not prohibit class certification. Whether Defendants have a common policy requiring their new employees to purchase uniforms is appropriate for class treatment. If Plaintiffs are able to establish a common policy at trial, to ascertain damages the parties will need to determine whether the cost of uniforms caused the class members' wages to drop below the minimum wage. This is similar to an overtime wage suit, where damages are determined by an analysis of the hours a class member worked over 40. Further, since January 1, 2011, employers were required to pay all employees for the costs of their uniforms, "regardless of a given employee's regular rate of pay," *see* 12 N.Y.C.R.R. §§ 146–1.7, 146–1.8, and accordingly no possible "individual defenses" on this ground could exist from and after that date.

In addition, Defendants contend that Plaintiffs presented no evidence that they were required to wear a uniform as defined in the NYLL. This is not correct for Defendants' delivery and retail employees. Prior to January 1, 2011, the pertinent regulation defines uniform as "clothing worn by an employee, at the request of the employer, while performing job-related duties." It does not, however, "include clothing that may be worn as part of an employee's ordinary wardrobe." 12 N.Y.C.R.R. § 137–3.13 (repealed January 1, 2011). Since January 1, 2011, ordinary wardrobe is defined as "ordinary basic street clothing selected by the employee where the employer permits variations in details of dress." 12 N.Y.C.R.R. § 146–3.10.

Plaintiffs' affidavits clearly state that they had a uniform, and that they were charged one time when they started work—the reasonable inference being that Plaintiffs had no choice in the matter. Mr. Marcotrigiano also testified that it is the company's policy for retail division employees to wear a t-shirt and hat containing the Zaro's logo, and that he believed the policy was the same for the delivery persons. (*See id.* 40:21–42:2.) The

merits of whether the t-shirt and hat constitute a uniform is not appropriate to address or a motion for class certification. In any event, the issue does not appear to be resolvable as a matter of law. *See Ramirez v. CSJ & Co., Inc.*, No. 06 CIV. 13677(LAK), 2007 WL 700831, at *2 (S.D.N.Y. Mar. 6, 2007) ("Although I am sorely tempted, given current dress norms, to hold that a blue T-shirt bearing a deli's name and logo is 'clothing that may be worn as part of an employee's ordinary wardrobe,' the question probably is better decided by a trier of fact than as a matter of law.").

In sum, Plaintiffs have satisfied the commonality and typicality requirements for the proposed class' spread of hours and wage statement claims. Plaintiffs have failed to do the same for the proposed total class for the uniform claims, but did meet these requirements for Defendants' delivery and retail employees.

Accordingly, if Plaintiffs satisfy the remainder of Rule 23's requirements, I will certify three separate classes:

1. **The Tipped Employee Class:** this class consists of all delivery persons for their minimum and overtime wage, payroll practices (e.g., delayed tip payments), and improper tip-sharing claims from March 7, 2005 until the present;

2. **The Spread of Hours and Wage Statement Class:** this class consists of all current and former non-exempt employees (including delivery persons) for the wage statement and spread of hours claims from March 7, 2005 until the present; and

3. **The Uniform Claims Class:** this class consists of all current and former delivery and retail employees for the uniform claims from March 7, 2005 until the present.

### E. Plaintiffs have Satisfied the Adequacy Requirement

■ Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Adequacy of repre-

sentation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000). Defendants contest both prongs.

■ First, Defendants argue that Plaintiffs' counsel is inadequate to represent the proposed classes because they conducted an inadequate investigation of potential claims before filing the complaint, and because they have taken "zero discovery" on the claims presented by the SAC. (*See* Opp'n at 20.) I disagree with Defendants. Plaintiffs' attorney counsel is experienced in similar wage and hour litigation on behalf of aggrieved New York City workers, has represented that he is willing to commit the necessary resources to represent the class, (*see* Lee Decl. ¶¶ 7–9), and has adequately pursued this claim.[4]

■ The more serious dispute is over whether the named Plaintiffs will adequately represent the proposed classes' interests. Defendants do not contend that named Plaintiffs "possess the same interest and suffer the same injury shared by all members of the class [they seek to] represent[ ]." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 99 (2d Cir.2007) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). Defendants only argue that the named Plaintiffs cannot adequately represent the class because they have limited personal knowledge of the facts of this case, and do not understand their legal claims. Defendants direct the Court to cherry-picked excerpts from the named Plaintiffs' depositions, which they contend demonstrate that Plaintiffs do not understand their legal claims:

Q: Your complaint says that you are brining this action on behalf of a class of people, is that correct?
A: Yes.
Q: Who are those people?

A: Daniel, Enrique, I forgot the rest of the names but there are like two or three.

(Volpe Decl. Ex. 8 ("Jimenez Dep.") 70:18–24.)

Q: Your complaint purports to bring this action on behalf of a class of persons; is that correct?

A: Yes.

Q: Who are those persons?

A: The five who have joined in this suit: Enrique, Fernando, Daniel, Alejandro.

Q: Who else?

A: And I.

Q: Who else is part of that class?

A: It's only the five of us.

(Volpe Decl. Ex. 2 ("Hernandez Dep.") 53:16–54:1.)

Defendants also point out that Flores testified that he had no understanding of the concept of minimum wage. (Volpe Decl. Ex. 9 ("Flores Dep.") 6:7–20.)

■ Defendants attempt to use these isolated deposition testimony quotes fails. "The bar for showing sufficient knowledge is quite low." *Morangelli v. Chemed Corp.,* 275 F.R.D. 99, 119 (E.D.N.Y.2011). "Knowledge of all the intricacies of the litigation is not required and several courts have found that general knowledge of what is involved is sufficient." 7A Fed. Prac. & Proc. Civ. § 1766 (3d ed.). While Rule 23 requires "adequate personal knowledge of the essential facts of the case," plaintiffs are entitled to rely on their counsel for the legal underpinnings of their claims. *La Belle Farm,* 239 F.R.D. at 372. Moreover, "a rigid application of this requirement is inappropriate where, as here, the class comprises relatively low-skilled laborers. Such inflexibility runs counter to a principal objective of the class action mechanism—to facilitate recovery for those least able to pursue an individual action." *Id.* at 372 (internal citations omitted); *see also Noble,* 224 F.R.D. at 344–45.

---

4. Although the appointment of class counsel is outside the scope of the instant motion, this Court has reviewed the factors set forth in Rule 23(g)(1)(A) and does not foresee any problem in appointing the Lee Litigation Group, PLLC as class counsel when Plaintiffs so move. *See Espinoza,* 280 F.R.D. at 128 n. 95.

Here, Plaintiffs can point to those same depositions to demonstrate that certain named Plaintiffs understand the nature of this lawsuit. Unlike Hernandez and Jiminez, both Salvador and Flores testified that they understand that they are acting on behalf of a class. (*See* Flores Dep. 59:21–23; Lee Decl. Ex. 9 ("Salvador Dep.") 54:3–16.) While Flores responded "No" to the question, "Do you know what the concept of minimum wage is, not the number but the concept," he did testify that he understood his claims in general. (Flores Dep. 6:7–25.) Hernandez and Salvador both demonstrated at their deposition that they were clearly aware of the concept of minimum wage. (Hernandez Dep. 10:9–13; Salvador Dep. 30:8–11.)

More importantly, the sworn affidavits of named Plaintiffs clearly demonstrate that Plaintiffs are familiar with, and are actively participating in, this litigation. Courts in this circuit have found that plaintiffs' affidavits can properly satisfy evidence adequacy. *See Hamelin v. Faxton–St. Luke's Healthcare,* 274 F.R.D. 385, 396 (N.D.N.Y.2011) ("The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims."); *Leone v. Ashwood Fin., Inc.,* 257 F.R.D. 343, 352 (E.D.N.Y.2009) (finding adequacy, relying in part on plaintiff's "affidavit stating that she understands the responsibilities of a class representative and that she has knowledge of this action."). Those affidavits also express that named Plaintiffs agree to act as class representatives.

Thus, because the named Plaintiffs have demonstrated a basic understanding of the instant action, I find that Plaintiffs have satisfied the adequacy requirement.

### F. Plaintiffs Have Satisfied the Rule 23(b)(3) Requirements

#### 1. Predominance

■■■ The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Thus, "when determining whether common issues predominate, courts focus on the liability issue ... and if

the liability issue is common to the class, common questions predominate over individual ones." *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 157–58 (S.D.N.Y. 2002) (citation omitted). Moreover, while a court evaluating whether a movant has satisfied the requirements of Rule 23(b)(3) must examine both the claims and the defenses, the mere fact that a defense " 'may arise and ... affect different class members differently does not compel a finding that individual issues predominate over common ones.' " *Noble,* 224 F.R.D. at 339. The relevant inquiry is "not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense." *La Belle Farm,* 239 F.R.D. at 373 (quoting *Noble,* 224 F.R.D. at 339).

■■■ In the present case, common questions of liability predominate over individual inquiries. Defendants do not dispute that the Tipped Employee Class satisfies this requirement. This makes sense, because the issues to be litigated—whether the subclass members: (1) were supposed to be paid the minimum wage as a matter of law and were not; (2) were correctly paid their overtime wages; and (3) had their tips improperly shared and withheld—"are about the most perfect questions for class treatment." *La Belle Farm,* 239 F.R.D. at 373. Should this class prevail, any factual variations in the number of hours worked, etc., will go to the issue of damages. *Noble,* 224 F.R.D. at 345.

Defendants also do not dispute that the all employees involved in the wage statement claims satisfy this requirement.

■■■ Defendants focus their energies on the classes containing the spread of hours and uniform claims, arguing that Plaintiffs' spread of hours and uniform claims will both "require employee-by-employee determinations of whether liability exists," and that this determination predominates. (Opp'n at 22.) I disagree. The key issue regarding this class is whether Defendants had general policies to deny its employees spread of hours pay and to make its employees pay for their uniforms. Plaintiffs have adduced sufficient evidence that these common policies exist. Resolution of these questions—and

thus Defendants' liability—will depend on common proof. *Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08 CIV. 7813 DAB, 2011 WL 4389636, *3 (S.D.N.Y. Sept. 21, 2011) ("While the extent, existence, and lawfulness of these company-wide policies are issues for the finder of fact at trial, they are issues that are subject to generalized proof.")

In *Whitehorn v. Wolfgang's Steakhouse, Inc.*, Judge Sand certified a class for, among other things, spread of hour wages where the defendants had a pay policy that was "identical" for all employees. 275 F.R.D. 193, 200 (S.D.N.Y.2011). The court reasoned that,

> Like commonality, predominance is not defeated by the fact that potential plaintiffs worked at different restaurant locations and in different categories of tipped positions. Although individualized determinations must be made as to the amount of wages, overtime, and *spread of hours pay* each Plaintiff is due based on the hours projected for their shift and the number of hours worked, common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations.

*Id.* (emphasis added); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 108 (E.D.N.Y.2011) (holding that predominance is satisfied where "the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees."); *Guzman v. VLM, Inc.*, No. 07–CV–1126 JG RER, 2008 WL 597186, at *7 (E.D.N.Y. Mar. 2, 2008).

The same reasoning applies to the uniform claims. The predominant issue is whether Defendants had a common policy to require its delivery and retail employees to purchase a uniform in contravention of the NYLL's requirements. The value of the uniform and the damages owed to Plaintiffs—if Defendants are held liable—can be simply and mechanically calculated by resort to Defendants' pay records.

Because the Court is confident that individual questions raised by any of the Defendants' purported defenses will not predominate over questions common to any of the classes, I find that Plaintiffs have satisfied the predominance requirement.

### 2. Superiority

■ The last question to be addressed under Rule 23(b) is whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). "Courts routinely hold that a class action is superior where ... potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant." *Whitehorn*, 275 F.R.D. at 200. Defendants do not contest this prong.

The Court does not foresee any particular difficulties to be encountered in the management of the class actions and is confident that any such concerns can be addressed by counsel and the Court if and when they arise. I therefore find that this prong has been satisfied for all the proposed classes.

\* \* \*

Therefore, for the above reasons, the classes created by the Court above are hereby certified pursuant to Rule 23(a) and (b)(3).

## II. The Form of Class Notice

Plaintiffs request that the Court authorize Plaintiffs' proposed form of notice to the proposed NYLL Rule 23 classes and FLSA collective action members. I have modified Plaintiffs' proposed classes, thus rendering Plaintiffs' proposed notice inaccurate.

In accordance with the terms of this Order, the parties shall submit a joint proposed notice to the Court for approval in order to ensure that the drafting and distribution of the notice is timely, accurate, and informative. *See Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07CV2579 (HB), 2008 WL 938584, at *4 (S.D.N.Y. Apr. 7, 2008) ("notice should be jointly prepared"); *Chowdhury v. Duane Reade, Inc.*, No. 06CIV.2295 (GEL), 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007) ("The Court expects the parties to work out those issues on their own, and

provide the Court with the stipulated notice.").

This jointly proposed notice shall be submitted within 30 days of the date of this Order. If the parties cannot come to an agreement, they are to submit competing proposed notices.

### III. Request for Class Members' Information

The Defendants are ordered to disclose to Plaintiffs the names, last known addresses, alternate addresses, all telephone numbers, positions and dates of employment of all members of the three classes by 30 days from the date of this Order.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion to certify the class action is granted as to the following classes:

1. **The Tipped Employee Class:** this class consists of all delivery persons for their minimum and overtime wage, payroll practices (e.g., delayed tip payments), and improper tip-sharing claims from March 7, 2005 until the present;

2. **The Spread of Hours and Wage Statement Class:** this class consists of all current and former non-exempt employees (including delivery persons) for the wage statement and spread of hours claims from March 7, 2005 until the present; and

3. **The Uniform Claims Class:** this class consists of all current and former delivery and retail employees for the uniform claims from March 7, 2005 until the present.

Plaintiffs' request for the Court to authorize their proposed form of notice is denied. The parties are to submit a jointly proposed notice shall be submitted within 30 days of the date of this Order. If the parties cannot come to an agreement, they are to submit competing proposed notices.

The Defendants are ordered to disclose to the Plaintiffs the names, last known addresses, alternate addresses, all telephone numbers, positions and dates of employment of all members of the three classes by 30 days from the date of this Order.

The Clerk is instructed to remove the motions at ECF No. 48 from the Court's list of open motions.